<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: RICHARD HOWARD GLANTON, Debtor,<br><br>RICHARD HOWARD GLANTON,<br><br>Appellant,<br><br>v.<br><br>NEWPORT INVESTMENT GROUP, LLC,<br><br>Appellee. | Civil Action No. 23-03868 (GC)<br><br>On Appeal from<br>Bankruptcy Case No. 22-11055 (CMG)<br>Adversary Pro. No. 22-01388 (CMG)<br><br>**<u>OPINION</u>** |

**<u>CASTNER, District Judge</u>**

**THIS MATTER** comes before the Court upon an appeal by Appellant Richard Glanton from the July 7, 2023 Order and Opinion issued by the Bankruptcy Court, which denied Appellant's motion to dismiss Adversary Proceeding No. 22-01388, brought against him by Appellee Newport Investment Group, LLC, of California. (ECF No. 1.) The Court has carefully considered the parties' submissions, and for the reasons set forth below, **AFFIRMS** the Bankruptcy Court's Order.

I.     **BACKGROUND**

Appellant Richard Glanton challenges the July 7, 2023 Order and accompanying Opinion from the Bankruptcy Court that denied his motion to dismiss the adversary proceeding brought against him by Appellee Newport Investment Group, LLC, of California.[1]  (ECF No. 1.)

On February 9, 2022, Mr. Glanton filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code, Bankruptcy Case No. 22-11055.  On June 7, 2022, Newport California filed a proof of claim for $7,186,756.38.  (ECF No. 18 at 4-6.)  On August 30, 2022, the Bankruptcy Court converted the Chapter 11 bankruptcy case to one under Chapter 7 of the Bankruptcy Code.  On or about December 7, 2022, Newport California filed an adversary complaint against Mr. Glanton for nondischargeability of debt pursuant to 11 U.S.C. § 523 and for denial of discharge pursuant to 11 U.S.C. § 727.  (*Id.* at 135-172.)

In its adversary complaint, Newport California alleged that it is a secured creditor of Mr. Glanton, a resident of Princeton, New Jersey.  (*Id.* at 138.)  It further alleged that Mr. Glanton "attempted to borrow money from [Newport's] assignor Luxury Asset Lending, LLC, . . . a licensed California Commercial Finance Lender and holder of a Pawn Brokers License . . . on behalf of himself, and a company he represented to be the . . . majority controlling shareholder of, . . . called Philadelphia Television Network, Inc., a Pennsylvania corporation."  (*Id.* at 140.)  This alleged loan resulted in an April 6, 2017 default judgment in the Superior Court of the State of California against Mr. Glanton in the amount of $3,897,919.22.  (*Id.* at 141.)  The judgment was

---

[1]     Mr. Glanton is proceeding *pro se*, but he indicates in his filings that he is an attorney and member of the Pennsylvania bar.  (*See, e.g.*, ECF No. 7 at 1.)

allegedly assigned to Newport Montana on April 23, 2018.[2]  (*Id.*)  Newport Montana allegedly then assigned the judgment to Newport California on July 18, 2018.  (ECF No. 18-2 at 400-401.)

On or about March 7, 2023, Mr. Glanton moved to dismiss the adversary complaint.  (ECF No. 18 at 199-200.)  Among other things, Mr. Glanton argued that Newport California does not have standing to bring the adversary complaint against him because the default judgment was vacated by the Court of Appeal of the State of California in October 2020.  (*Id.* at 213-215.)  He also argued that there had been two Newport entities—Newport Montana and Newport California, with the same names—and that the initial assignment of the default judgment from Luxury Asset Lending to Newport Montana in April 2018 was invalid and the subsequent assignment of the judgment from Newport Montana to Newport California (the Appellee here) in July 2018 was also invalid.  (*Id.* at 763-781.)

Following several rounds of briefing, multiple oral arguments, discovery, and a May 15, 2023 evidentiary hearing, the Bankruptcy Court denied the motion to dismiss on July 7, 2023.  (ECF No. 1-2 at 1-22.)  In its Opinion, the Bankruptcy Court addressed three issues: (1) whether the default judgment against Mr. Glanton and the assignment of the default judgment from Luxury Asset Lending to Newport Montana were vacated by the California Court of Appeal in 2020, leaving Newport California with no claim against Mr. Glanton; (2) whether the default judgment had been properly assigned, in April 2018, from Luxury Asset Lending to Newport Montana; and (3) whether Newport Montana then properly assigned the default judgment, in July 2018, to Newport California, the Appellee here.  (*Id.* at 2.)

---

[2]   The unusual events underpinning the questionable loan from Luxury Asset Lending are described in detail by the Court of Appeal of the State of California in *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.*, 56 Cal. App. 5th 894 (2020).

On the first issue, the Bankruptcy Court determined that Mr. Glanton's claim that the default judgment against him was vacated "is wholly unsupported by an examination of the" California Court of Appeal's decision. (*Id.* at 9.) Mr. Glanton took "no part in the motion to vacate," and the Bankruptcy Court found that the California Court of Appeal's decision relieved only the Philadelphia Television Network from the default judgment that was joint and several. (*Id.* at 10.) The Bankruptcy Court also determined that the California Court of Appeal's decision vacated the April 30, 2018 order that assigned Mr. Glanton's interests in Philadelphia Television Network, but it did not vacate the April 23, 2018 assignment from Luxury Asset Lending to Newport Montana of the default judgment against Mr. Glanton in his individual capacity. (*Id.* at 10-11.)

On the second issue, the Bankruptcy Court determined that the April 23, 2018 assignment of the judgment from Luxury Asset Lending to Newport Montana was valid. (*Id.* at 12-13.) Mr. Glanton argued that the assignment was invalid because Newport Montana had been subject to a February 24, 2018 Montana Notice of Involuntary Dissolution, but the Bankruptcy Court found that Newport Montana had been reinstated on December 10, 2018, by the Montana Secretary of State and Montana law holds that this made Newport Montana "an existing legal entity at the time of the Judgment Assignment" back in April 2018. (*Id.* at 13.) The Bankruptcy Court cited testimony from a Montana corporate attorney who supported this conclusion. (*Id.*)

Finally, on the third issue, the Bankruptcy Court determined that there were "no grounds to disturb the" assignment from Newport Montana to Newport California. (*Id.* at 20.) Mr. Glanton argued that the assignment between the two entities was invalid because the individual who "signed the document transferring the Judgment from Newport MT to Newport CA . . . on behalf of Newport MT in July 2018," Brian Roche, had dissociated from Newport Montana in February

4

2018.  (*Id.* at 13-14.)  The Bankruptcy Court accepted that Mr. Roche dissociated from Newport Montana and that Montana law provides that "upon dissociation from an LLC 'a member's right to participate in the management and conduct of the company's business terminates,'" but the Bankruptcy Court noted that evidence showed that on "the same date" of Mr. Roche's dissociation, "a 'First Amended and Restated Operating Agreement' of Newport MT was executed" that "specified . . . that Roche was the 'appointed manager'" and was authorized at "all times . . . to take actions on behalf of the LLC."  (*Id.* at 15-17 (first quoting Mont. Code Ann. § 35-8-805(2)(a)).)  The Bankruptcy Court found that "whatever the effect of dissociation," the "First Amended Operating Agreement of Newport MT ma[de] clear that . . . it was the intention of the members that Roche continue to manage Newport MT."  (*Id.* at 18-19.)  The Bankruptcy Court also found that Montana law "allows [in certain circumstances] for a dissociated member to bind a company, unless the counterparty can demonstrate it was unaware," and the Bankruptcy Court found "no evidence that the counterparties ([Luxury Assert Lending], the other members of Newport MT, and then Newport CA) have any issue with the" assignment of the default judgment against Mr. Glanton from Newport Montana to Newport California in July 2018.  (*Id.* at 19-20.)

Mr. Glanton appealed the denial of his motion to dismiss on or about July 20, 2023.  (ECF No. 1.)  He filed his opening brief on August 21, 2023.  (ECF No. 7.)  Newport opposed on November 16, 2023.  (ECF No. 17.)  Mr. Glanton replied on November 28, 2023.  (ECF No. 19.)

II.   **LEGAL STANDARD**

In cases originating in the Bankruptcy Court, district courts occupy the first level of appellate review.  28 U.S.C. § 158(a)(1) grants a district court jurisdiction "to hear appeals from final judgments, orders and decrees" of the bankruptcy court.  A district court considering such an appeal "review[s] the bankruptcy court's legal determinations *de novo*, its factual findings for

5

clear error, and its discretionary decisions for abuse of discretion." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (quoting *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020)). And a court "must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (quoting *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989)). The district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Holmes*, 603 B.R. 757, 770 (D.N.J. 2019) (citation omitted).

## III.   DISCUSSION

On appeal, Mr. Glanton once again advances the three arguments that were considered by the Bankruptcy Court as to why the adversary complaint should be dismissed for lack of standing. The Court examines each argument in turn and finds no basis to reverse the Bankruptcy Court's determination that Newport has met its burden of standing to pursue its adversary proceeding.[3]

Under Federal Rule of Civil Procedure 12(h)(3), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), a court "must" dismiss a complaint if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3); Fed. R. Bankr. P. 7012(b).[4] Motions to dismiss for lack of standing are "a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted); *accord N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015).

---

[3]   Whether Newport's claims are in fact meritorious will be decided following additional proceedings before the Bankruptcy Court.

[4]   Mr. Glanton also references Federal Rule of Civil Procedure 17(b)(2), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7017, as a basis for his motion.

"On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Ballentine*, 486 F.3d at 810 (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)). Where, as here, a defendant brings a "factual attack" to a plaintiff's standing, relying on evidence outside the pleadings, the plaintiff bears the burden to prove that jurisdiction exists, and "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Nevertheless, the United States Court of Appeals for the Third Circuit has cautioned that "dismissal via a . . . factual challenge to standing should be granted sparingly," namely, in circumstances "'where such a claim is wholly insubstantial and frivolous'" and typically not for "merits-related defects." *Davis*, 824 F.3d at 349-50 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

"To participate in bankruptcy proceedings, parties must fulfill the standing requirements imposed by Article III of the U.S. Constitution and by the U.S. Bankruptcy Code and the Federal Rules of Bankruptcy Procedure." *In re Potter*, Civ. No. 11-40237, 2023 WL 4558816, at *3 (D.N.J. July 17, 2023).

Under Article III, standing consists of three elements: has plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). And "an injury in fact must be both concrete and particularized." *Id.* at 340 (quoting *Friends of*

7

*the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). For an injury to be "concrete," it must "actually exist," that is, be "real, and not abstract." *Id.* (first quoting Webster's Third New International Dictionary 472 (1971); and then quoting Random House Dictionary of the English Language 305 (1967)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 561 n.1).

Under the Bankruptcy Code and Rules, a "party in interest" is typically allowed to participate in the bankruptcy proceedings. *See, e.g.*, 11 U.S.C. §§ 502(a), 1109(b), 1128(b); Fed. R. Bankr. P. 7003. A "party in interest" has been defined "as one who 'has a sufficient stake in the proceeding so as to require representation'" and "as 'anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.'" *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (first quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985); and then quoting *Matter of James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)). The United States Court of Appeals for the Third Circuit has explained that "[p]ersuasive authority indicates that Article III standing and standing under the Bankruptcy Code are effectively coextensive." *Id.* at 211.

### A.   2020 DECISION FROM THE CALIFORNIA COURT OF APPEAL

Mr. Glanton first argues that the April 6, 2017 default judgment against him in the Superior Court of the State of California and the assignment of that judgment to Newport Montana on April 23, 2018 were vacated by a 2020 decision from the California Court of Appeal. (ECF No. 7 at 2, 19-22.) Because no motion was made to sever Mr. Glanton after the California Court of Appeal remanded the matter to the Superior Court of California, Mr. Glanton argues that the appellate

8

court's "broad and definite language" applies to him and that there is no judgment or assignment on which Newport can rely to pursue the adversary complaint against him. (*Id.* at 3-4.)

After careful review, the Court finds no error in the Bankruptcy Court's determination that the California Court of Appeal intended to vacate the default and default judgment only as to the Philadelphia Television Network, Inc., and not as to Mr. Glanton in his individual capacity. The Court also finds no error in the Bankruptcy Court's determination that the Court of Appeal did not intend to vacate the April 23, 2018 assignment of the judgment from Luxury Asset Lending to Newport Montana.

The April 6, 2017 default judgment states that it is joint and several as to the Philadelphia Television Network and Mr. Glanton, and it provides a total award against both in the amount of $3,897,919.22. (ECF No. 18-2 at 40-41.) In its October 29, 2020 opinion, the California Court of Appeal reversed a Superior Court of California decision that had denied the Philadelphia Television Network's motion to vacate and set aside the default and default judgment. *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.*, 56 Cal. App. 5th 894, 915 (2020). The Court of Appeal also found that the April 30, 2018 assignment order, which purported to assign ownership and control of the Philadelphia Television Network's assets, should be vacated. *Id.*

Mr. Glanton argues that the Court of Appeal's decision vacated the default and default judgment as to him in his individual capacity and not only as to the Philadelphia Television Network, but Mr. Glanton does not point to evidence that supports such a conclusion. Mr. Glanton does not, for example, argue that he filed a similar motion to vacate the judgment or joined in the Philadelphia Television Network's motion to vacate. Indeed, the Court of Appeal's written decision indicates that it considered only the Philadelphia Television Network's appeal of the

9

motion to vacate, and reversed so that default against the Philadelphia Television Network would be vacated. The Court of Appeal is silent as to the validity of the default or default judgment against Mr. Glanton. *See id.* at 906 ("[Philadelphia Television Network] filed its motion to vacate and set aside default judgment in this action on April 5, 2019."), 910 ("It was an abuse of discretion for the trial court not to grant [Philadelphia Television Network's] request for relief under section 473.5."), 914 ("In its motion before the trial court, [Philadelphia Television Network] requested that the April 2018 assignment order also be vacated.").

The Court of Appeal also does not appear to have vacated the April 23, 2018 assignment of the default judgment against Mr. Glanton from Luxury Asset Lending to Newport Montana. Instead, the Court of Appeal expressly stated that it was vacating the April 30, 2018 assignment of Mr. Glanton's purported interest in the Philadelphia Television Network's assets. (*Compare* ECF No. 18-2 at 42-43, *with id.* at 47-52.) The Court of Appeal did so based on the conclusion that the judgment against the Philadelphia Television Network was to be vacated.[5] *See Luxury Asset Lending, LLC*, 56 Cal. App. 5th at 914-15 ("Upon remand, there will no longer be a judgment in [Luxury Asset Lending's] favor. Once a judgment is vacated, it can no longer be enforced. As goes the judgment, so must go the assignment order. . . . The order denying the motion to vacate default judgment is reversed and remanded with instructions for the trial court to vacate the default, default judgment and assignment order entered April 30, 2018.").

Moreover, after the California matter was remanded from the Court of Appeal, the Superior Court entered a minute order that supports the Bankruptcy Court's determination that the

---

[5]   The Pennsylvania Superior Court has interpreted the California Court of Appeal's decision as "specifically vacat[ing] the default judgment against [Philadelphia Television Network]." *Newport Inv. Grp., LLC v. Philadelphia Television Network, Inc.*, 305 A.3d 968 (Pa. Super. Ct. 2023). It has also interpreted the decision as "vacating the assignment order transferring Glanton's shares in [Philadelphia Television Network] to Newport." *Id.*

California courts took no action to vacate the judgment against Mr. Glanton. The minute order states that "[i]n compliance with the ruling of the Court of Appeal, the [Superior] Court vacates the default judgment as to Philadelphia Television Network, vacates the default as to Philadelphia Television Network and vacates the assignment to Newport Investment Group, LLC," of the Philadelphia Television Network's assets. (ECF No. 18-1 at 792.) If the Superior Court believed that the Court of Appeal had intended to vacate the judgment and order as to both the Philadelphia Television Network *and* Mr. Glanton, it could have said so. It did not. Instead, it clearly stated that the default and default judgment were vacated as to the Philadelphia Television Network, and the Superior Court does not include Mr. Glanton within its directive. And while the Superior Court gave Luxury Asset Lending permission to file a new complaint against the Philadelphia Television Network, writing that the parties could "submit a motion to sever the defendants," this does not support the conclusion that the Superior Court viewed the vacatur order as applying to Mr. Glanton as well.

Thus, based on the above, the Court does not find a basis to reverse the Bankruptcy Court's determination that the California Court of Appeal did not vacate the default or default judgment as to Mr. Glanton or the April 23, 2018 assignment of the judgment from Luxury Asset Lending to Newport Montana. Accordingly, the Bankruptcy Court is affirmed on this issue.

B.  ASSIGNMENT FROM LUXURY ASSET LENDING TO NEWPORT MONTANA

Mr. Glanton next argues that Luxury Asset Lending could not have assigned its interest in the default judgment to Newport Montana in April 2018, because Newport Montana "was in 'involuntary suspension'" and "lacked capacity to conduct business when the alleged assign[ment] occurred." (ECF No. 7 at 6-7.) The Bankruptcy Court acknowledged that Newport Montana had been involuntarily suspended by Montana's Secretary of State in February 2018 based on Newport

Montana's failure to file a required annual report, but the Bankruptcy Court found that the mater had been "resolved on December 10, 2018, when Newport MT was reinstated by the Montana Secretary of State." (ECF No. 1-2 at 12.)  The Bankruptcy Court explained that under Montana law governing reinstatement following administrative dissolution,[6] "restoration of limited liability company rights . . . relates back to the date the limited liability company was administratively dissolved, and the limited liability company is considered to have been an existing legal entity from the date of its original organization."[7]  Mont. Code Ann. § 35-8-912(5).  Therefore, the assignment of the judgment to Newport Montana in April 2018 was valid by virtue of Newport Montana's reinstatement and its relation back to the date of involuntary suspension.  A Montana corporate attorney testified at the evidentiary hearing in support of this conclusion, and Mr. Glanton provided no competing evidence.  (ECF No. 1-2 at 13.)

On appeal, Mr. Glanton provides no basis to overturn the Bankruptcy Court's factual finding that Newport Montana had been reinstated in December 2018 nor does he provide any legal basis to depart from the Bankruptcy Court's conclusion that Newport Montana's reinstatement related back, thereby permitting the April 2018 assignment of the default judgment from Luxury Asset Lending to Newport Montana.[8]  Accordingly, the Bankruptcy Court is affirmed on this issue.

---

[6] The parties do not dispute that Montana law applies.

[7] The Supreme Court of Montana has noted that Montana's "statutory framework provides five years in which administratively dissolved LLCs may seek reinstatement." *Deschamps v. Farwest Rock, Ltd*, 474 P.3d 1282, 1286 (Mont. 2020) (citing Mont. Code Ann. § 35-8-912).

[8] The Bankruptcy Court also considered whether the assignment could be invalidated on the basis that Newport Montana had not been registered to transact business in California in April 2018.  The court found that there was no evidence that registration in California was needed for the "one-time assignment." (ECF No. 1-2 at 13.)  Mr. Glanton does not provide a reason on appeal for this Court to reconsider that finding.

### C. DISSOCIATION OF MR. ROCHE FROM NEWPORT MONTANA

Mr. Glanton's final argument is that the assignment of the default judgment from Luxury Asset Lending to Newport Montana in April 2018 and the assignment then from Newport Montana to Newport California in July 2018 were invalid because they were authorized by "Brian Roche, formerly a member of Newport LLC of Montana," who "had been dissociated effective February 14, 2018 by public notice and never readmitted and had no capacity . . . to conduct any business on behalf of Newport of Montana." (ECF No. 7 at 7-8, 17-19.)

Mr. Glanton cites a provision of Montana's Limited Liability Company Act that provides that "[u]pon a member's dissociation from a limited liability company," "the member's right to participate in the management and conduct of the company's business terminates . . . and the member ceases to be a member and must be treated the same as a transferee of a member." Mont. Code Ann. § 35-8-805(2)(a). Mr. Glanton also cites two cases to support his argument that Mr. Roche's dissociation from Newport Montana rendered Mr. Roche unable to assign any rights in the default judgment either to or from Newport Montana. (ECF No. 7 at 17-19.)

In *In re Garrison-Ashburn, L.C.*, the bankruptcy court explained that, under Virginia law, "[t]he effect on a member of becoming dissociated from a limited liability company is to divest the member of all rights as a member to participate in the management or operation of the company. The only rights remaining are the dissociated member's economic rights . . . . That is to say, the dissociated member is expelled from the company, but does not forfeit the value of his ownership interest." 253 B.R. 700, 704 (Bankr. E.D. Va. 2000). As a result, the court found that a member who had dissociated from a limited liability company could not then "lawfully execute and consummate a contract for the sale of its real estate." *Id.*

13

Similarly, in *Northwest Wholesale, Inc. v. Pac Organic Fruit, LLC*, the Supreme Court of Washington explained that under Washington law, when a member of a limited liability company dissociates, he has only the rights of an assignee and "[a]s an assignee, the dissociated member retains rights to share in profits but loses any management rights." 357 P.3d 650, 655 (2015).  The dissociated member therefore "forfeit[s] any right to bring a derivative action on behalf of" the limited liability company.  *Id.*

Both cases stand for the proposition that is plain under Montana law, which is that upon dissociation, a member "loses his right to participate in the management and conduct of the company's business."  *In re Neal*, Civ. No. 12-25439-L, 2013 WL 12108275, at *3 (Bankr. W.D. Tenn. Feb. 5, 2013) (quoting Mont. Code Ann. § 35-8-805(2)(a)); *see also* Carlson, et. al., *Recent Decisions Affecting the Montana Practitioner*, 74 Mont. L. Rev. 459, 501 n.465 (2013) ("The statutes further provide that a member's right to participate in 'the management and conduct of the company' terminates upon her dissociation." (quoting Mont. Code Ann. § 35-8-805(2)(a))).

The Bankruptcy Court in this case accepted that proposition of law; however, based on the evidence and testimony at the evidentiary hearing, the Bankruptcy Court found that after Mr. Roche dissociated from Newport Montana,[9] a First Amended Operating Agreement was executed on February 14, 2018, that altered the limited liability company's ownership structure and installed Mr. Roche as the "appointed manager," authorized at "all times . . . to take actions on behalf of the LLC."  (ECF No. 1-2 at 15.)  This authority was granted well in advance of the July 18, 2018 assignment of the judgment from Newport Montana to Newport California.  The Bankruptcy Court found that this grant of authority was reiterated in the Second Amended and Restated Operating

---

[9]    The Bankruptcy Court noted that Mr. Roche testified that "he dissociated to streamline a background check for another venture," the purchase of "a hotel in Las Vegas which required an FBI background check." (ECF No. 1-2 at 14-17.)

Agreement, signed on July 18, 2018, which returned Mr. Roche to ownership status and continued to contain language that Mr. Roche could take actions for Newport Montana.  (*Id.* at 15-16.)

The Bankruptcy Court also noted two relevant provisions in Montana's Limited Liability Company Act.  The first provision sets forth that a dissociative event "does not, in itself, cause the manager to cease to be a manager with respect to the limited liability company or with respect to any other series of members."  Mont. Code Ann. § 35-8-803(2)(a).  The second provision sets forth that a dissociated member may continue to bind a company for two years after dissociation if the other party "reasonably believed that the dissociated member was then a member" and "did not have notice of the member's dissociation."  Mont. Code Ann. § 35-8-811.

After summarizing the evidence, including weaknesses in Mr. Roche's testimony, the Bankruptcy Court found that Mr. Roche had "provided sufficient proof that his dissociation from Newport MT did not prevent him from executing an assignment of the Judgment to Newport CA." (ECF No. 1-2 at 20.)  It found that the "First Amended Operating Agreement of Newport MT makes clear that, whatever the effect of dissociation, it was the intention of the members that Roche continue to manage Newport MT."  (*Id.* at 19.)  And the Bankruptcy Court found persuasive that "no one from Newport MT, Newport CA, or [Luxury Asset Lending]" testified that "the transactions were not authorized by the company," Mr. Glanton "provided . . . no evidence to contradict Roche's testimony," and Mr. Glanton called no witness "with direct knowledge of the transactions who might testify as to Roche overstepping his authority."  (*Id.* at 19.)

Based on these factual findings and Montana law, the Bankruptcy Court concluded that there were "no grounds to disturb" the assignment of the default judgment from Luxury Asset Lending to Newport Montana or from Newport Montana to Appellee Newport California.  (*Id.* at 20.)  Mr. Glanton now asks this Court to set aside the Bankruptcy Court's decision on the basis

that Mr. Roche's dissociation from Newport Montana should be seen as dispositive under Montana law, but the Court has been presented with no proofs or legal basis to reject the Bankruptcy Court's conclusion that the "state statute regarding dissociation" does not "trump the actual intention of the parties . . . affected by dissociation," as embodied in Newport Montana's operating agreements authorizing Mr. Roche to continue to take action on the LLC's behalf. (*Id.* at 20.)

Under these circumstances, the Court does not find that the Bankruptcy Court was clearly in error in its factual determination that it was the intention of Newport Montana's members that Mr. Roche be authorized to assign the default judgment to Newport California nor does there appear to be any legal basis to reject the Bankruptcy Court's finding that Montana law permitted Mr. Roche to continue to bind Newport Montana under these factual circumstances, particularly when no objection is raised by either Luxury Asset Lending or Newport California as to Mr. Roche's authority to assign the judgment. *See, e.g.* Mont. Code Ann. §§ 35-8-803(2)(a), -811. Accordingly, the Bankruptcy Court is affirmed on this issue.

### D. Procedural Defects

Newport California argues that Mr. Glanton's appeal should be dismissed because it "is procedurally deficient." (ECF No. 17 at 5.) Among other issues, Newport argues that Mr. Glanton did not properly "file an appendix" or "comply with the rules governing the table of contents, table of authorities, statement of case, and certificate of compliance." (*Id.*) It also contends that "the contents of a statement of issues to be presented on appeal and designation of the record are grossly incomplete." (*Id.* at 5-6.) Because the Court denies the appeal on its merits, it does not rely on the alleged procedural defects for its decision. In any event, self-represented litigants are typically given "greater leeway where they have not followed the technical rules of pleading and procedure."

*Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)).

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Bankruptcy Court's July 7, 2023 Order denying the motion to dismiss the adversary complaint for lack of standing is **AFFIRMED**. An appropriate Order follows.

Dated: June 30, 2024

*s/ Georgette Castner*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

17